UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IZET BECIREVIC,

    Plaintiff,

v.                                      CASE NO. 4:18-CV-00363-ALM-CAN

NAVIENT,

    Defendant.
_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OPPOSED MOTION TO COMPEL DEFENDANT TO MAKE DISCLOSURE REQUIRED BY RULE 26**

The Court should deny Plaintiff Izet Becirevic's Opposed Motion to Compel Defendant to Make Disclosure Required by Rule 26 [ECF No. 28], and award Defendant Navient Solutions, LLC ("NSL") its reasonable attorneys' fees and costs incurred to oppose the frivolous motion.

## I.     INTRODUCTION

This lawsuit involves claims for breach of contract and fraud allegedly arising out of NSL's servicing of Mr. Becirevic's federal student loans. The breach of contract claim is premised on a very specific allegation of fact: that NSL "defaulted two (2) student loans that were in [a] forbearance agreement" on March 23, 2017. *Becirevic v. Navient* ("*Becirevic II*"), No. 4:18-cv-00363-ALM-CAN (E.D. Tex.), Compl. [ECF No. 1] at 2, ¶ 6 (emphasis added); *see also id.* at 2, ¶ 7; *id.* at 3, ¶ 8. The fraud claim relies on the same allegation but adds a second, equally specific allegation of fact: that "[a]fter defaulting Plaintiff's student loans, instead to notify [sic] Plaintiff that default claim is filed on March 23, 2017, [NSL] intentionally mislead [sic] the Plaintiff on April 02, 2017 by notifying Plaintiff that his forbearance agreement was

1

extended and that he is not required to make any payments until September 17[,] 2017." *Id.* at 3, ¶ 8. These allegations of fact are knowingly false. *See generally* **Exhs. A**, **C**, & **D**.

Despite the limited and frivolous nature of Mr. Becirevic's claims, NSL went above and beyond the Court's mandatory disclosure requirement—the only basis for Mr. Becirevic's motion to compel[1]—in an effort to avoid this exact scenario.[2] No good deed goes unpunished.

Having failed to extract a payoff from NSL at a court-ordered mediation (as he is believed to have done after lengthy litigation with the guarantor of the same Loans in a related lawsuit in this Court), Mr. Becirevic now seeks to compel production of the following:

1. unspecified, additional call recordings from 2016-2017 <u>that do not exist</u>;

2. unspecified, additional documents "related to [a] forbearance agreement dated on April 2, 2017" <u>that does not exist</u>;

3. unspecified, additional documents related to a "forbearance agreement from 09/12/2016 to 09/11/2017" <u>that does not exist</u>;

4. unspecified, additional documents "related to the forbearance agreement terminations on October 10, 2016," <u>which do not exist</u> and would be irrelevant; and

5. unspecified, additional "documents related to Plaintiff[']s student loan collections fees dated on October 10, 2016," <u>which do not exist</u> and cannot possibly be relevant to any claims or defenses before the Court.

As best, Mr. Becirevic is confused.[3] Considering the totality of the circumstances, however, the most reasonable inference is that he filed this motion hoping that NSL eventually will cave to his settlement demands in the face of increasing litigation costs. It will not.

---

[1] Indeed, Mr. Becirevic has not propounded any discovery requests on NSL.

[2] NSL produced to Mr. Becirevic 431 pages of documents, including the full Correspondence History for the Loans from September 2011 to May 2018; the full payment histories for the Loans for the same time (including summaries in an easy-to-understand format), miscellaneous account documents from as early as 2008 including, but not limited to, the relevant forbearance applications and supporting documents; the full Loan correspondence file from September 2011 to May 2018 including, but not limited to, billing statements and forbearance approval letters; documents Mr. Becirevic's reflecting online activity in NSL's MYL portal in 2016 and 2017; and all three call recordings associated with Mr. Becirevic's account from 2016 to 2017. **Exh. E** at 3-4, ¶ 12.

[3] For example, to the extent requests (2) and (3) refer to an *administrative forbearance* implemented by NSL on Mr. Becirevic's account to stay collections beginning October 2016 while the guarantor of his Loans,

This Court should reject Mr. Becirevic's continuing abuse of the judicial process, deny his motion to compel with prejudice, and award NSL its costs and attorneys' fees incurred.

## II. BACKGROUND

1. Mr. Becirevic is the borrower on two federal Stafford loans (the "Loans") under the Family Federal Education Loan Program ("FFELP"). **Exh. A** at 2, ¶ 5; **Exh. A-1.**

2. NSL is the servicer of Mr. Becirevic's Loans. **Exh. A** at 2, ¶ 8.

3. ECMC is the guarantor of Mr. Becirevic's Loans. **Exh. A** at 2, ¶ 9.

4. On September 12, 2016, Mr. Becirevic submitted an Application for a False Certification Discharge to NSL in connection with his Loans. **Exh. A** at 2, ¶ 13; **Exh A-4**.

5. On September 18, 2016, Mr. Becirevic submitted an application to NSL seeking a temporary forbearance in connection with the Loans. **Exh. A-5**. Notably, the sole basis of that written request was to permit review of his pending discharge application. *Id.*

6. On September 26, 2016, Mr. Becirevic also verbally requested a voluntary hardship forbearance. **Exh. D** at 2, ¶ 6; **Exh. D-1**. That same day, NSL notified Mr. Becirevic that his request for a hardship forbearance was approved. *Id.* The hardship forbearance was given an effective date of August 29, 2016, and initially set to end April 28, 2017. *Id.* NSL later adjusted the end date of the hardship forbearance period to September 11, 2016, after receiving Mr. Becirevic's false certification discharge application dated September 12, 2016. *Id.*

7. On or about October 5, 2016, NSL granted Mr. Becirevic an administrative forbearance based on his submission of a false certification discharge application dated September 12, 2016. **Exh. D** at 2-3, ¶ 7; **Exh. D-1**.[4] The administrative forbearance period was

---

Educational Credit Management Corp. ("ECMC"), this administrative forbearance did not involve a separate forbearance application; nor was there a related forbearance agreement between Mr. Becirevic and NSL.

[4] NSL does not believe that a motion to seal the redacted exhibits marked as confidential under the Protective Order [ECF No. 21] and included with NSL's response would be appropriate considering the public's

retroactive to September 12, 2016, and initially set to end September 11, 2017. *Id.* NSL grants administrative forbearances in situations like Mr. Becirevic's to facilitate a loan guarantor's review and approval/denial of an application for false certification discharge, as permitted by the governing regulations issued under the Higher Education Act of 1965 ("HEA").[5] *Id.*.

8. When NSL extends an administrative forbearance to permit review of a false certification discharge application, a forbearance application is not required. Also, NSL does not enter into administrative forbearance agreements in such cases. **Exh. D** at 3, ¶ 8.

9. On or about October 10, 2016, NSL submitted an Ability to Benefit ("ATB") claim to ECMC based on Mr. Becirevic's false certification discharge application. **Exh. D** at 3, ¶ 9; **Exh. D-1**. The submission of this claim was not based on a loan default. *Id.* NSL did not place Mr. Becirevic's loan account in a default status when it submitted the ATB claim to ECMC. *Id.* NSL did not terminate any forbearance agreement with Mr. Becirevic on this date. *Id.* NSL also did not impose $960.49 in "collection" fees to Mr. Becirevic's account on that date. *Id.*

10. On or about October 21, 2016, NSL received an accepted claim response from ECMC in connection with the ATB claim. **Exh. D** at 3, ¶ 11; **Exh. D-1**.

11. ECMC received Mr. Becirevic's false certification discharge application no later than October 26, 2016. **Exh. C-7** at 7; **Exh. C-8; Exh. C-11**. ECMC evaluated Mr. Becirevic's false certification discharge application under 34 C.F.R. § 682.402(e)(7). *Id.*

12. ECMC denied Mr. Becirevic's false certification discharge application on November 28, 2016. **Exh. A-8**; **Exh. C-5**.

---

common law right of access to judicial records and, therefore, submits these documents to the Court in their current form is permitted under paragraph 5(c) of the Protective Order. If required, and only to the extent necessary, NSL withdraws its confidentiality designation as to the redacted exhibits at issue.

[5] *See* 34 C.F.R. § 682.211(f)(8) (authorizing lenders to grant forbearances "[f]or periods necessary for the Secretary or guaranty agency to determine the borrower's eligibility for discharge of the loan because of . . . false certification of loan eligibility").

13. ECMC's Office of the Ombudsman further detailed the reasons for the denial of his application on or about December 5, 2016. **Exh. C-11**; *see also* **Exh. C-12**. Mr. Becirevic appealed the denial, requesting review by ED. **Exh. C-12**, **C-13**.

14. ED agreed with ECMC and denied Mr. Becirevic's application in a letter dated February 9, 2017. **Exh. C-13**. As a result, ECMC notified Mr. Becirevic that he would be considered to be in default on the FFELP Loans unless he submitted a written statement to ECMC acknowledging the Loans within 30 days. **Exh. C-16**.

15. Mr. Becirevic failed to submit the required written statement. **Exh. C-8**, at 3, ¶ 14. Therefore, ECMC initiated a default claim on his Loans on March 23, 2017. *Id.* at 3, ¶ 17 ("Because Becirevic defaulted on his student loans and ECMC, as FFELP Guarantor, paid a default claim. . . ."); *see also* **Exh. A-11** ("ECMC will create & pay a DF claim.").

16. On or about March 29, 2017, ECMC returned NSL's ATB claim as rejected following ECMC's payment of a default claim on March 23, 2016, due to Mr. Becirevic's failure to reaffirm his Loans after the denial of his discharge application. **Exh. D** at 3, ¶ 12; **Exh. D-1**.

17. On April 2, 2017, Mr. Becirevic accessed his account in NSL's Manage Your Loans ("MYL") portal. **Exh. D** at 3-4, ¶ 13; **Exh. D-2**. The Correspondence History for the Loans does not reflect that Mr. Becirevic requested or obtained any letter from NSL's website on April 2, 2017. *Id.* NSL did not enter into a forbearance agreement with him on April 2, 2017. *Id.*

18. From September 26, 2016 to April 2, 2017, NSL did not engage in any collection activity in connection with the Loan because they were in forbearance. **Exh. D** at 4, ¶ 16.

19. On September 8, 2017, Mr. Becirevic sued ECMC alleging, among other things, that it breached a forbearance agreement approved by NSL in September 2016 by attempting to collect on the defaulted student loans (this was incorrect as a matter of law). **Exh. C-1** at 4-7.

20. In the earlier case, Mr. Becirevic consistently represented that:

- ECMC told him that it would be placing his student loans in default, **Exh. C-1**, *Becirevic v. Educational Credit Mgmt. Corp. ("Becirevic I")*, No. 4:17-cv-00632-RAS-CAN (E.D. Tex.), Compl. [ECF No. 1], at 5; **Exh. C-2**, *Becirevic I*, Am. Compl. [ECF No. 17], at 3, ¶ 10; **Exh. C-15**, *Becirevic I*, Summary Judgment Response [ECF No. 76] at 2; **Exh. C-17**, *Becirevic I*, Exh. 4 to Summary Judgment Response [ECF No. 76-4]; and

- ECMC placed his student loans in default, **Exh. C-2**, *Becirevic I*, Am. Compl. [ECF No. 17], at 3, ¶ 13; **Exh. C-3**, *Becirevic I*, Response [ECF No. 36] at 3 (specifically identifying March 21, 2017 as the date on which ECMC filed a default claim in connection with his student loans); *Becirevic I*, **Exh. C-4**, Exh. 2 to Response [ECF No. 36-2] at 3 ("ECMC will create and pay a default claim."); **Exh. C-8**, *Becirevic I*, Exh. 3 to Summary Judgment Response [ECF No. 76-3].

21. Not only did he make these representations, Mr. Becirevic filed a Rule 11 motion for sanctions against ECMC, contending ECMC's motion to dismiss his complaint was frivolous. **Exh. C-5**, *Becirevic I*, Motion [ECF No. 46]; *see also* **Exh. C-6**, *Becirevic I*, Exh. 4 to Motion Response [51-4] at 1, ¶ 2 (emphasis added) ("Declaration of Maura Rivard–Hoster contains false statements and I will seek appropriate relief and sanctions against your client because the evidence that I have produce[d] to you shows that Navient did not default my student loan. Also I will be seeking sanction against you and your law firm because you all know this information is false and you produce those information."); *id.* at 1, ¶ 4 (" . . . Maura Rivard Hoster sw[ore] that ECMC paid default claim but evidence shows that Navient did not default this claim.").

22. Mr. Becirevic and ECMC participated in a court-ordered mediation on April 19, 2018. **Exh. F**, *Becirevic I*, Compl. [ECF No. 88]. On May 1, 2018, the mediator reported to the Court that the parties had reached settlement at mediation. *Id.* The case between Mr. Becirevic and ECMC was dismissed on May 29, 2018. **Exh. G**, *Becirevic I*, Compl. [ECF No. 89].

23. Less than a month after his case against ECMC settled, before the Court had even dismissed the case, and with events clearly still fresh in his mind, Mr. Becirevic sued NSL for fraud and breach of contract claiming the exact opposite of the many statements identified above:

> On March 23, 2017 [NSL] without notifying Plaintiff . . . defaulted two (2) student loans that were in forbearance agreement. After defaulting Plaintiff's student loans, instead to notify [sic] Plaintiff that default claim is filed on March 23, 2017, [NSL] intentionally mislead the Plaintiff on April 02, 2017 by notifying Plaintiff that his forbearance agreement was extended and that he is not required to make any payments until September 17[,] 2017.

*Becirevic II*, Compl. [ECF No. 1] at 2, ¶ 6 (emphasis added); *see also id.* at 2, ¶ 7; 3, ¶ 8.

24. This Court entered its Order Governing Proceedings on July 12, 2018. *Becirevic II*, Order [ECF No. 8]. The order set August 13, 2018 as the parties' deadline to complete initial mandatory disclosures and specified the contents and standards for such disclosures. *Id.*

25. On August 13, 2018, NSL served its written mandatory disclosures and certain responsive, non-confidential documents to Mr. Becirevic. **Exh. E** at 1, ¶ 3 & **Exh. E-1**; *Becirevic II*, Notice [ECF No. 12]. Since Mr. Becirevic opposed the entry of a standard confidentiality order, NSL further moved the Court to extend its deadline to complete its initial mandatory disclosure pending a ruling on a contemporaneously filed Motion for Entry of Protective Order. *Becirevic II*, Ext. Motion [ECF No. 11]; *Becirevic II*, Motion for Prot. Order [ECF No. 13].

26. The Court granted NSL's motions, entered a protective order, and required that NSL complete its initial mandatory disclosure by September 4, 2018. *See Becirevic II*, Order [ECF No. 19]; *Becirevic II*, Prot. Order [ECF No. 21].

27. NSL served its full initial mandatory production to Mr. Becirevic on September 4, 2018. *See* **Exh. E** at 1-2, ¶ 4. That production included 430 pages of documents and is believed to have included call recordings from September 26, 2016, and December 1, 2016.[6] *Id.* at 2, ¶ 4.

28. On September 27, 2018, NSL supplemented its production to include a third call recording dated September 1, 2016. NSL also made the September 26, 2016, and December 1,

---

[6] NSL believes that it made the call recordings dated September 26, 2016, and December 1, 2016 available to Mr. Becirevic on September 4, 2018, but cannot be certain based on the records available to its counsel. If not, Mr. Becirevic received these audio files no later than September 27, 2018. **Exh. E** at 2, ¶ 5.

7

2016 recordings available at that time. *See* **Exhibit E-2.** NSL's counsel confirmed to Mr. Becirevic that NSL had located no more call recordings from 2016 to 2017.

29. On December 14, 2018, NSL e-mailed the three call recordings identified above to Mr. Becirevic, again affirming that it was unable to locate any more recordings from 2016 to 2017 but would search for any additional, relevant recordings identified by him. In addition, NSL recommended that Mr. Becirevic consult a lawyer and provided a link to the Dallas Bar Association's lawyer referral service. **Exh. E** at 2, ¶ 6 & **Exh. E-3**.

30. On December 17, 2018, NSL again made its full document production available to Mr. Becirevic, including the three call recordings discussed above. **Exh. E** at 2, ¶ 7.

31. After the parties did not settle at a December 18, 2018 mediation, Mr. Becirevic notified NSL's counsel of his intent to file a motion to compel. **Exh. E** at 2, ¶ 8 & **Exh. E-4**.

32. After careful review of the draft motion to compel, NSL notified Mr. Becirevic that it opposed his motion on December 24, 2018. **Exh. E** at 3, ¶ 9 & **Exh. E-5**. NSL's counsel notified Mr. Becirevic that, if he proceeded on the motion to compel, NSL would seek to recover its reasonable expenses. *Id.* In addition, NSL's counsel again encouraged Mr. Becirevic to seek counsel and provided him a link to the Dallas Bar Association's lawyer referral service. *Id.*

33. On December 26, 2018, Mr. Becirevic provided a revised motion to compel to NSL's counsel which, in contrast his original motion, requested for the first time "all documents related to forbearance agreement dated on April 02, 2017." **Exh. E** at 3, ¶ 10 & **Exh. E-6**.

34. As NSL's counsel understood the new request, Mr. Becirevic was referring to an April 2, 2017 letter produced by him in discovery purporting to show that NSL extended or granted a new forbearance term on April 2, 2017, after allegedly defaulting his Loans. NSL did not generate or mail this letter to Mr. Becirevic. *See generally* **Exh. A.** However, Mr. Becirevic

8

now appeared to be asserting a new theory that NSL created the letter when it granted him an administrative forbearance in October 2016 (even though the letter is dated April 2, 2017) and that he printed the letter on April 2, 2017, when accessing NSL's MYL portal. *See* **Exh. E-6**.

35. On December 26, 2018, and before Mr. Becireivc filed his revised motion to compel, NSL's counsel stated he would request and produce NSL's records of the April 2, 2017 web session. **Exh. E** at 3, ¶ 11 & **Exh. E-6**. Rather than engaging in a good-faith effort to resolve his new request, Mr. Becirevic proceeded to file the revised motion that same day.

### III.     STANDARD

Mr. Becirevic asks the Court to compel NSL to "make disclosure required by Federal Rule of Civil Procedure 26(a) and Court Local Rule CV-26 (a)" but does not identify any legal basis on which he asks the Court to enter such an order. Motion at 1. Given his reference to Rule 26(a), it appears that Mr. Becirevic is seeking relief under Fed. R. Civ. P. 37(a)(3)(A).

Rule 37(a)(3)(A) provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A). However, if the motion is denied, the Court "must . . . require the movant . . . to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

### IV.     ARGUMENT AND AUTHORITIES

A. <u>Rule 26(a) does not require production of the documents Mr. Becirevic seeks and, therefore, the Court must deny his request for relief under Rule 37(a)(3)(A).</u>

Mr. Becirevic's reliance on Rule 26(a) as the basis for his motion to compel is misplaced. As a threshold matter, the Court should deny the motion because the supplemental production he seeks is not required by Rule 26(a) and, thus, cannot be compelled under Rule 37(a).

9

Rule 26(a) states in relevant part that "a party must, without awaiting a discovery request, provide to the other parties: . . . (ii) a copy—<u>or a description by category and location</u>—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Rule 37(a), in turn, authorizes an order compelling "disclosure" if a party "fails to make a disclosure <u>required by Rule 26(a)</u>." Fed. R. Civ. P. 37(a)(3)(A) (emphasis added).

NSL met its Rule 26(a)(1)(A)(ii) disclosure obligation when it identified the following categories of documents which it may use to support its claims and defenses "customer agreements, call recordings, correspondence, account notes, screenshots of online activity, and loan documents related to Plaintiff's Loans serviced by NSL."[7] **Exh. E-1**. As a matter of law, then, it did not fail to make a disclosure required by Rule 26(a).

NSL's only duty to produce documents in this case was set by the Court's Order Governing Proceedings. That order recognizes the duty to produce documents "in addition to information required by Rule 26(a)(1)," *Becirevic II*, Order [ECF No. 8] at 4, is separate from but "may be combined with disclosures under Rule 26(a)(1)(A)(ii) so that duplication is avoided," *id.* at 4, ¶ 5. Because the duty to produce documents is separate from NSL's Rule 26(a)(1) obligation, Rule 37(a) does not provide a basis for relief.[8] The Court accordingly should deny Mr. Becirevic's motion to compel supplemental production under Rule 26(a)(1).

---

[7] In contrast with other Rule 26 disclosure requirements, subsection (a)(1)(A)(ii) notably does not require a disclosing party make documents "available for inspection and copying as under Rule 34." *Compare* Fed. R. Civ. P. 26(a)(1)(A)(ii), *with* Fed. R. Civ. P. 26(a)(1)(A)(iii), (iv).

[8] That a motion to compel is unavailable based on a party's optional disclosure of documents disclosed under Rule 26 makes sense considering that, when Rule 37(a) authorizes a motion to compel in other instances, the opposing party has a right to object to the discovery request, including on the basis of proportionality (which this Court expressly directed the parties to consider when formulating their discovery control plan).

B.    <u>Local Rule CV-26(a) does not impose a production obligation and, therefore, cannot serve as the basis for a motion to compel under Rule 37(a).</u>

Mr. Becirevic's reference to Local Rule CV-26(a) cannot save his motion. That rule states in relevant part that "a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venue." Local Rule CV-26(a). On its face, this rule clearly does not impose a duty to produce documents and Mr. Becirevic identifies no legal basis for the entry of an order compelling production thereunder.[9]

Further, Local Rule CV-26(a) has no application to the facts of this case. Mr. Becirevic does not argue or show that NSL declined to respond to any discovery request, much less for the reasons cited in Local Rule CV-26(a). To the contrary, NSL timely met its Rule 26(a) and initial mandatory disclosure obligations. Mr. Becirevic's motion should be denied.

C.    <u>Mr. Becirevic also failed to show a violation of the Order Governing Proceedings.</u>

Even if Mr. Becirevic's *pro se* motion to motion was viewed very liberally as contending, in the alternative, that NSL did not comply with a discovery order under Fed. R. Civ. P. 37(b)(2)(A) or some other basis (which is denied), he nevertheless fails to show relief is appropriate. The Court's Order Governing Proceedings required the parties to produce "[a] copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are *relevant to the claim or defense of any party*." *Becirevic II*, Order [ECF No. 8] at 4, ¶ 5 (emphasis added). The order directs the parties to Local Rule CV-26(d) for the "meaning of 'relevant to the claim or defense of any

---

[9] The Court's Order Governing Proceedings provides that failure to comply with the local rules, the Federal Rules of Civil Procedure, or the order itself "may result in the exclusion of evidence at trial, the imposition of sanctions by the court, or both." *Becirevic II*, Order [ECF No. 8] at 7. Read in concert with Fed. R. Civ. P. 37(b)(2)(A), the Court may have authority in appropriate circumstances to compel a supplemental document production based on a local rule. NSL does not believe such authority applies here, especially when not argued by Mr. Becirevic. But, even if it did, Mr. Becirevic has not, and cannot, show that NSL violated Local Rule CV-26(a).

11

party.'" *Id.* at 4. Local Rule CV-26(d) includes several factors as relevant guidelines for determining whether information is "relevant to any party's claim or defense." *Id.*

Relevant information may include information that "would not support the disclosing parties' contentions," information that identifies "persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties," information that "is likely to have an influence on or affect the outcome of a claim or defense," information that "deserves to be considered in the preparation, evaluation, or trial of a claim or defense," and "information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense." Local Rule CV-26(d).

Mr. Becirevic's motion to compel is silent on these points. He fails to explain (1) why he believes any relevant but unproduced documents exist, (2) how such documents, if they do exist, are relevant to any claim or defense before the Court under the standard above, or (3) why an order compelling supplemental production for an alleged violation of the Court's Order Governing Proceedings would be an appropriate remedy as a matter of fact or law. He also did not, as required by the Order Governing Proceedings and Local Rule CV-7, "attach affidavits and other supporting documents to the motion . . ." *Becirevic II*, Order [ECF No. 8] at 5. Without more, the Court therefore should deny his motion without further consideration.

    D.    <u>NSL fully complied with its initial mandatory production obligation.</u>

        *1. NSL produced all call recordings from 2016 to 2017.*

Mr. Becirevic's first request for supplementation demands "that Defendant provides copies for recording calls between Plaintiff and Defendant from 2016 and 2017." Motion at 2, ¶ 1. NSL twice provided such recordings to Mr. Becirevic after its review of the file, including the Correspondence History for the Loans which would identify all such calls. **Exh. E** at 2, ¶¶ 5, 6.

In both instances, NSL notified Mr. Becirevic that it had provided all responsive recording and offered to continue its investigation upon receipt of information indicating any reason to believe additional recordings existed. *Id.* Mr. Becirevic identified none. This is not surprising. There are none. **Exh. D** at 4, ¶ 15. Instead, he proceeded to file this motion to compel. The Court accordingly should conclude this request is frivolous and deny the motion on this point.

> 2. *There is no forbearance agreement dated April 2, 2017 and, therefore, no documents are responsive to this request.*

Mr. Becirevic's second request for supplementation requests "that Defendant provides all documents related to forbearance agreement dated on April 02, 2017." Motion at 2, ¶ 2. NSL did not enter into a forbearance agreement with Mr. Becirevic on April 2, 2017. **Exh. D** at 3-4, ¶ 13. The letter provided by him in discovery, which all evidence currently available to NSL shows was fabricated, does not even reflect a "forbearance agreement." Instead, it includes details about the administrative forbearance that NSL extended to Mr. Becirevic in October 2016—long before ECMC defaulted his Loans as required by law—which may have been copied and pasted from NSL's website. **Exh. D** at 2, ¶ 7; **Exh. D-3**. Thus, there are no documents responsive to this request and the motion should be denied on this point.

> 3. *There is no forbearance agreement from September 12, 2016 to September 11, 2017 and, therefore, no documents are responsive to this request.*

Mr. Becirevic's third request for supplementation requests "copies of Plaintiff's forbearance agreement from 09/12/2016 to 09/11/2017," which "was approved by Defendant on date 10/05/2016." Motion at 2, ¶ 3. This request belies Mr. Becirevic's faulty understanding of the facts. It implies that the administrative forbearance extended to him by NSL to facilitate review of the false certification discharge application that he submitted was incorporated into an "agreement" and "approved" by NSL after a formal application process. Neither contention is

13

correct. There is no such forbearance "agreement." **Exh. D** at 3, ¶ 8. Therefore, there are no documents responsive to this request, or possibly relevant to the claims or defenses before the Court. Further, NSL produced its Correspondence History identifying the details of the administrative forbearance, as well as a copy of the false certification discharge application that precipitated it. Plaintiff's motion accordingly should be denied on this point.

> *4. NSL did not terminate the September 26, 2016 forbearance agreement on October 10, 2016 and, therefore, no documents are responsive to this request.*

Mr. Becirevic's fourth request for supplementation requests "that Defendant provides all documents related to the forbearance agreement terminations on October 10, 2016." Motion at 2, ¶ 4. It is unclear why Mr. Becirevic believes that any forbearance agreement was terminated by NSL on October 10, 2016. The notations for October 10, 2016 in NSL's Correspondence History, *see* **Exh. D-1**, which has been produced to Mr. Becirevic, do not support this position. Indeed, no forbearance agreement was terminated on that date. **Exh. D** at 2, ¶ 9; **Exh. D-1**. Since no termination occurred on that date (nor is it clear what relevance any such documents would have), the Court should deny the motion to compel on this point.

> *5. NSL did not impose a collection fee on October 10, 2016 and therefore, has no documents responsive to this request.*

Mr. Becirevic's fifth request for supplementation requests that "Defendant provides all documents related to the Plaintiffs student loan collections fees dated on October 10, 2016" and refers to "fees in the amount of 960.49 were added to Plaintiffs loans as collections processing fees while Plaintiffs loans were in forbearance agreement approved by Defendant." Motion at 2, ¶ 5. First, this request has absolutely no relevance to any claim or defense before the Court. Second, the $960.49 figure does not represent "collection fees." **Exh. D** at 2, ¶ 9. As a result, there are no responsive documents and the motion to compel should be denied.

## V. CONCLUSION

NSL produced all documents required by the Court's Order Governing Proceedings and more. Given his *pro se* status, NSL made multiple attempts to explain why his additional requests are inappropriate – to no avail. Rather than undertaking a good-faith evaluation of the lack of merit of this lawsuit, Mr. Becirevic has chosen to double-down on his bad-faith conduct by filing this frivolous motion to compel. Considering this, the Court should deny Mr. Becirevic's motion to compel with prejudice, award NSL its reasonable costs and attorneys' fees incurred to defend the motion, and award NSL all further relief the Court deems proper and just.

Dated: January 9, 2019

/s/ *Adam C. Ragan*
Adam C. Ragan
State Bar No. 24079172
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
214-979-3000
214-740-7110 (fax)
aragan@huntonak.com

ATTORNEYS FOR DEFENDANT
NAVIENT SOLUTIONS, LLC

## CERTIFICATE OF SERVICE

I certify that on January 9, 2019, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record. A copy also will be mailed to Mr. Becirevic via regular and certified mail at: 2008 Laurel Lane, Plano, Texas 75074.

/s/ *Adam C. Ragan*
Adam C. Ragan