UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IZET BECIREVIC,

     Plaintiff,

v.                         CASE NO. 4:18-CV-00363-ALM-CAN

NAVIENT,

     Defendant.

_____/

### **DEFENDANT NAVIENT SOLUTIONS, LLC'S MOTION FOR SANCTIONS**

Mr. Becirevic is well-known to this Court, as are the facts of this case. He previously sued Educational Credit Management Corp. ("ECMC") alleging various claims arising out of the same student loans and underlying events at issue here. *See* **Exh. C,** Docket, *Becirevic v. Educational Credit Mgmt. Corp.* ("*Becirevic I*"), No. 4:17-cv-00632-RAS-CAN (E.D. Tex.).

Throughout the 89 docket entries in that case, Mr. Becirevic consistently represented that:

- ECMC told Mr. Becerivic that it would be placing his student loans in default, **Exh. C-1**, *Becirevic I*, Compl. [ECF No. 1], at 5; **Exh. C-2**, *Becirevic I*, Am. Compl. [ECF No. 17], at 3, ¶ 10; **Exh. C-15**, *Becirevic I*, Summary Judgment Response [ECF No. 76] at 2; **Exh. C-17**, *Becirevic I*, Exh. 4 to Summary Judgment Response [ECF No. 76-4];

- ECMC placed his student loans in default, **Exh. C-2**, *Becirevic I*, Am. Compl. [ECF No. 17], at 3, ¶ 13; **Exh. C-3**, *Becirevic I*, Response [ECF No. 36] at 3 (specifically identifying March 21, 2017 as the date on which ECMC filed a default claim in connection with his student loans); *Becirevic I*, **Exh. C-4**, Exh. 2 to Response [ECF No. 36-2] at 3 ("ECMC will create and pay a default claim."); **Exh. C-8**, *Becirevic I*, Exh. 3 to Summary Judgment Response [ECF No. 76-3]; and

- ECMC reported his student loans as in default, **Exh. C-1**, *Becirevic I*, Compl. [ECF No. 1], at 5; **Exh. C-2**, *Becirevic I*, Am. Compl. [ECF No. 17], at 3, ¶ 14.

Not only did he make these representations, Mr. Becirevic filed a Rule 11 motion for sanctions against ECMC, contending ECMC's motion to dismiss his complaint was frivolous. **Exh. C-5**, *Becirevic I*, Motion [ECF No. 46]; *see also* **Exh. C-6**, *Becirevic I*, Exh. 4 to Motion

Response [51-4] at 1, ¶ 2 (emphasis added) ("Declaration of Maura Rivard–Hoster contains false statements and I will seek appropriate relief and sanctions against your client because <u>the evidence that I have produce[d] to you shows that Navient did not default my student loan</u>. Also I will be seeking sanction against you and your law firm because you all know this information is false and you produce those information."); *id.* at 1, ¶ 4 (" . . . Maura Rivard Hoster sw[ore] that ECMC paid default claim but <u>evidence shows that Navient did not default this claim</u>.").

Now, having settled his claims against ECMC, he incredibly claims the exact opposite, alleging that Navient Solutions, LLC ("NSL") (improperly identified in plaintiff's Complaint as "Navient") defaulted his loans:

> On March 23, 2017 <u>[NSL] without notifying Plaintiff . . . defaulted two (2) student loans that were in forbearance agreement</u>. After defaulting Plaintiff's student loans, instead to notify Plaintiff that default claim is filed on March 23, 2017, [NSL] intentionally mislead the Plaintiff on April 02, 2017 by notifying Plaintiff that his forbearance agreement was extended and that he is not required to make any payments until September 17 2017.

*Becirevic v. Navient* ("*Becirevic II*"), No. 4:18-cv-00363-ALM-CAN (E.D. Tex.), Compl. [ECF No. 1] at 2, ¶ 6 (emphasis added); *see also id.* at 2, ¶ 7; 3, ¶ 8 (same). On this basis, Mr. Becirevic alleges NSL is guilty of fraud and breach of contract. *Id.* at 2-3. In addition to punitive damages, he seeks $800,000 in actual and noneconomic damages. *Id.* at 3-4.

The central premise of this lawsuit, *i.e.*, that NSL defaulted Mr. Becirevic's student loans is false, and he knows it. *See supra*; *see also* **Exh. B-3** (including copy of letter from ECMC to NSL dated March 23, 2017 showing that ECMC defaulted the student loans). In addition, NSL's investigation has revealed that Mr. Becirevic fabricated the April 2, 2017 letter on which his fraud claim relies. *See* **Exh. A** at 4, ¶¶ 24(a)-(n). Because Mr. Becirevic has refused to withdraw his frivolous breach of contract and fraud claims against NSL after informal and formal requests,

*see* **Exhs. B-2**, **B-4**, this Court should dismiss Plaintiff's Original Complaint ("Complaint") with prejudice and order that he pay all reasonable attorneys' fees and costs incurred by NSL.

## I.    BACKGROUND

Mr. Becirevic is the borrower on two federal Stafford loans, evidenced by a Federal Stafford Loan Master Promissory Note ("MPN") issued under the Family Federal Education Loan Program ("FFELP"). **Exh. A** at 2, ¶ 5; **Exh. A-1**. FFELP loans are authorized by Title IV, Part B, of the Higher Education Act ("HEA"), as amended, 20 U.S.C. §§ 1071–1087. FFELP loans were made by private lenders, are insured by guaranty agencies, and are reinsured under guaranty agreements with the Department of Education ("ED"). *Hassert v. Navient Sols., Inc.*, 232 F. Supp. 3d 1049, 1050 (W.D. Wis. 2017); *see also* **Exh. C-7** at 4-10.

The HEA authorized ED to "prescribe such regulations as may be necessary to carry out the purposes" of the FFELP. 20 U.S.C. § 1082(a)(1). Under that authority, the Secretary of ED enacted regulations to govern the collection of FFELP loans by lenders and guaranty agencies. *E.g.*, 34 C.F.R § 682.411(a) ("In the event of delinquency on a FFELP loan, the lender must engage in at least the collection efforts described in paragraphs (c) through (n) of this section . . . ."); 34 C.F.R § 682.410(b)(6) ("A guaranty agency must engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender.").

Federal regulations also govern the processes by which a borrower may seek discharge of FFELP loans and, in the event of a default, obtain administrative review of a guaranty agency's payment of a default claim. *E.g.*, 34 C.F.R § 682.410(b)(5)(ii)-(vii) (governing the notice and hearing procedures following the payment of a default claim); 34 C.F.R. § 682.402(e) (setting procedures governing "false certification" discharges of federal student loans).

At all time periods relevant to the Complaint, NSL serviced two FFELP loans disbursed under Mr. Becirevic's MPN on March 17, 2008: (1) a loan in the original principal amount of $3,500, and (2) a loan in the original principal amount of $4,000 ("FFELP Loans"). **Exh. A** at 2, ¶¶ 7-8. The guarantor of Mr. Becirevic's FFELP Loans is ECMC. **Exh. A** at 2, ¶¶ 9-10.

On September 12, 2016, Mr. Becirevic submitted an Application for a False Certification Discharge to NSL. **Exh. A** at 2, ¶ 13; **Exh A-4**. Mr. Becirevic's application required ECMC to accept assignment of Mr. Becirevic's FFELP Loans. 34 C.F.R. § 682.401(b)(8)(i)(B). ECMC received the application no later than October 26, 2016. **Exh. C-7** at 7; **Exh. C-8; Exh. C-11**. ECMC then evaluated the application under 34 C.F.R. § 682.402(e)(7). *Id.*

In the interim, Mr. Becirevic also submitted an application to NSL seeking a temporary forbearance, and citing the pending review of his application for a loan discharge. **Exh. A-5**. On September 26, 2016, NSL notified Mr. Becirevic that his forbearance application was approved. **Exh. A-6**. Mr. Becirevic's payments of the FFELP Loans were therefore suspended though April 28, 2017. *Id.*

ECMC denied Mr. Becirevic's loan discharge application on November 28, 2016. **Exh. A-8**; **Exh. C-5**. ECMC notified Mr. Becirevic that he did not qualify for a discharge, stated the reason for its determination, and explained that he would be considered to be in default on the FFELP Loans unless he submitted a written statement to ECMC within 30 days acknowledging the debt or requesting an appeal of the denial. **Exh. C-5**; *see also* 34 C.F.R § 682.402(e)(7)(iii). In response to communications from Mr. Becirevic, ECMC's Office of the Ombudsman further detailed the reasons for the denial of his application on or about December 5, 2016. **Exh. C-11**; *see also* **Exh. C-12** (showing Mr. Becirevic was aware of the denial).

Mr. Becirevic appealed the denial, requesting review by ED. **Exh. C-12**, **C-13**. ED agreed with ECMC and denied Mr. Becirevic's application in a letter dated February 9, 2017. **Exh. C-13**. As a result, ECMC again notified Mr. Becirevic that he did not qualify for a discharge of his student loans, stated the reason for its determination, and explained that he would be considered to be in default on the FFELP Loans unless he submitted a written statement to ECMC acknowledging the loans within 30 days. **Exh. C-16** (emphasis added) ("If you do not return the 'False Certification Appeal Response' form within 30 days, and your loan is held by the lender, ECMC will instruct your lender to file a default claim. Any forbearance or deferment the lender has placed on your loans will no longer be honored."). Mr. Becirevic failed to do submit the required written statement. **Exh. C-8**, at 3, ¶ 14.

Because Mr. Becirevic failed to comply with the applicable regulations, **Exh. C-8** at 3, ¶ 14, EMC consequently initiated a default claim on his FFELP Loans on March 23, 2017, voiding the forbearance agreement with NSL. *Id.* at 3, ¶ 16 ("On March 23, 2017, ECMC as FFELP Guarantor, paid a default claim and was assigned all right, title, and interest in Becirevic' s student loans."); *id.* at 3, ¶ 17 ("Because Becirevic defaulted on his student loans and ECMC, as FFELP Guarantor, paid a default claim, any forbearance or deferment Becirevic may have previously had with any lender or servicer became void."); C.F.R. § 682.402(e)(7)(vi) ("The agency shall pay a default claim to the lender within 30 days after the borrower fails to return either of the written statements described in paragraph (e)(7)(iii)(B) of this section."); *see also* **Exh. A-11** (notifying NSL that ECMC defaulted the FFELP Loans due to Mr. Becirevic's failure to reaffirm the debt).

On September 8, 2017, Mr. Becirevic sued ECMC alleging that it breached the forbearance agreement approved by NSL in September 2016 by attempting to collect on the

defaulted student loans, made harassing calls in an attempt to collect the loans in violation of the Fair Debt Collection Practices Act, and violated the Fair Credit Reporting Act by reporting the student loans as in default. **Exh. C-1** at 4-7. As noted above, Mr. Becirevic alleged throughout his lawsuit against ECMC that ECMC—and not NSL—defaulted his student loans. More important, many of the documents filed in *Becirevic I* were submitted under the penalty of perjury. *Id.* at 7; **Exh. C-2** at 8; **Exh. C-3** at 7.

ECMC and Mr. Becirevic actively litigated *Becirevic I* through a court-mandated mediation on April 19, 2017, at which the parties' settled. **Exh. C**. Less than one month later, however, Mr. Becirevic sued NSL swearing that it—not ECMC—defaulted his student loans. *See Becirevic II*, Compl. [ECF No. 1].

On August 13, 2018, counsel for NSL wrote Mr. Becirevic notifying him that its investigation showed his claims were without legal or factual merit and requested that he voluntarily dismiss his Complaint before any additional costs were incurred by either party. **Exh. B-3**. In addition to summarizing its position, NSL enclosed relevant communications including letters from ECMC to NSL communicating the denial of his application for discharge, determining that ECMC would pay the student loans as a default claim, and confirming that ECMC had in fact defaulted Mr. Becirevic's student loans as of March 23, 2017. *Id.*

Mr. Becirevic responded:

> I do not waste so much time on your client offer. Everything in your client offer that was forwarded to my e mail today is not consistent with the evidence. I disclose today attached documents and your office is still denying something that shows in the face that is truth. This case is not going to be decided Court and not by your office or your client. You are welcome to file whatever you wish to file and I will respond to you whatever you file. Save your time and do not asking me again to dismiss this claim.

**Exh. B-4** (emphasis added). Attached to this communication was a copy of an April 2, 2017 letter. That letter, which NSL did not have in its files, purported to show that NSL extended Mr. Becirevic's forbearance on April 2, 2017, after allegedly defaulting his FFELP loans.

> On August 14, 2018, counsel for NSL asked that Mr. Becirevic reconsider his position:

> Understand that, as it stands, NSL will not settle this case. We strongly believe it has been filed in bad faith and without any legal or factual basis. Although you are a pro se plaintiff, you are bound by Federal Rule of Civil Procedure 11. We are not presently pursuing a Rule 11 sanctions motion because we wanted to give you the courtesy of a chance to dismiss your claims voluntarily.

> If you do not voluntarily dismiss your claims (or provide new information to support them), you will leave us with no other choice but to seek sanctions including an order requiring you to pay NSL's attorneys' fees incurred as a result of the lawsuit.

> We prefer to avoid this course of action and respectfully ask that you dismiss your lawsuit against NSL promptly.

**Exh. B-5**. Mr. Becirevic again declined citing "the evidence that I have personally disclosure [sic] to your office." **Exh. B-6** (emphasis added). "You can argue that there is no basic for this lawsuit but also I can argue there is evidence to support my claim." *Id.* (emphasis added).

Compelled to litigate, NSL's continued investigation of Mr. Becirevic's Complaint revealed more troubling evidence of his bad-faith conduct: the April 2, 2017 letter serving as the only factual basis for his fraud claim (other than his false default allegation) was fraudulent.

Carl O. Cannon, Senior Account Analyst with NSL, determined that the April 2, 2017 letter purporting to be from NSL was not genuine and, further, that it had been fabricated, for the following reasons, among others that Mr. Cannon is prepared to testify about in camera.

- NSL has no copy of this letter in its system of record. **Exh. A** at 4, ¶ 24(a).

- NSL's Correspondence History for the FFELP Loans does not indicate a letter was generated or mailed on April 2, 2017. **Exh. A** at 4, ¶ 24(b); **Exh. A-2**.

- The body of the letter does not contain the date on which Mr. Becirevic's loan payments would resume. **Exh. B-1**; **Exh. A** at 4, ¶ 24(c); **Exh. A-6**; **Exh. A-12**.

- The letter does not identify a forbearance end date. **Exh. B-1**; **Exh. A** at 4, ¶ 24(d); **Exh. A-6**; **Exh. A-12**.

- The first page of the letter does not include a necessary barcode. **Exh. B-1**; **Exh. A** at 4, ¶ 24(e); **Exh. A-6**; **Exh. A-12**.

- The first page of the letter does not include a "Letter Code" identifying the type of letter generated. **Exh. B-1**; **Exh. A** at 4, ¶ 24(f); **Exh. A-6** (containing an F146 code, designating a system generated forbearance approval letter); **Exh. A-12**.

- The second page of the April 2, 2017 letter is identified as "Page 1 of 1." **Exh. B-1**; **Exh. A** at 4, ¶ 24(g).

- The loan numbers and forbearance dates on the second page of the April 2, 2017 letter appear to use a different font and/or font size. **Exh. B-1**; **Exh. A** at 4, ¶ 24(h).

- A default claim payment from ECMC was received from Mr. Becirevic's student loans on March 23, 2017 and posted to the loans on March 29, 2017.  The effective date of the default is March 23, 2017.  As a result of the claim payment being posted on March 29th, NSL could not have processed or approved forbearance or send out any correspondence.  Receipt of a claim payment from the guarantor terminates any further servicing activity since the loan is no longer owned or serviced by the loan servicer or lender. **Exh. B-1**; **Exh. A** at 4-5, ¶ 24(i).

- The April 2, 2017 letter bears no resemblance to the September 26, 2017 and May 3, 2018 forbearance approval letters that NSL generated and mailed to Mr. Becirevic in connection with his FFELP Loans. **Exh. A** at 5, ¶ 24(j); **Exh. A-6**; **Exh. A-12**.

On December 10, 2018, NSL served a copy of this sanctions motion to Mr. Becirevic via e-mail and U.S. Mail asking that he dismiss his frivolous Complaint with prejudice. **Exh. B** at 2, ¶ 9. He again declined and, as a result, NSL has no choice but to seek appropriate relief.

## II.      LEGAL STANDARD

Rule 11 provides in relevant part:

> **(b) Representations to the Court.** By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances: **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

"An inquiry reasonable under the circumstances requires an inquiry of the facts and law specific to the claim contained in the pleading at the time it is signed and filed." *Margetis v. Furgeson*, No. 4:12-CV-753, 2015 WL 6688063, at *10 (E.D. Tex. Sept. 29, 2015), *aff'd*, 666 Fed. Appx. 328 (5th Cir. 2016) (citation omitted).

> The determination of whether a reasonable inquiry into the facts has been made in a case will, of course, be dependent upon the particular facts; however, the district court may consider such factors as the time available to the signer for investigation; . . . the feasibility of a prefiling investigation; . . . the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery. As to the determination of whether a reasonable inquiry into the law has been made, a district court may consider the time available . . . to prepare the document; the plausibility of the legal view contained in the document; the *pro se* status of a litigant; and the complexity of the legal and factual issues raised.

*Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 875–76 (5th Cir. 1988). "[I]t is insufficient that a party's "subjective belief and purpose are innocent; it is also necessary that such mental

state be based upon reasonably inquiry, objectively analyzed, into the basis for the facts alleged and into the law.'" *Margetis*, 2015 WL 6688063, at *10 (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993)).

Like attorneys, *pro se* litigants must be honest with the Court. *Cheatam v. JCPenney Co., Inc.*, No. 1:16-CV-00072-MAC, 2016 WL 7743028, at *4 (E.D. Tex. Nov. 10, 2016), *report and recommendation adopted*, 1:16-CV-72, 2017 WL 123806 (E.D. Tex. Jan. 12, 2017) (dismissing *pro se* plaintiff's claims for violating her duty of candor). They are permitted "'*some* additional latitude in pleading.'" *Margetis*, 2015 WL 6688063, at *10 (emphasis added) (quoting *Taylor v. C.I.R.*, 350 F. App'x 913, 915 (5th Cir. 2009)). But *pro se* plaintiffs are "held to the same *ethical standards* as any other party who appears before the court." *Cheatam v. JCPenney Co., Inc.*, No. 1:16-CV-00072-MAC, 2016 WL 7743028, at *4 (E.D. Tex. Nov. 10, 2016), *report and rec. adopted*, No. 1:16-CV-72, 2017 WL 123806 (E.D. Tex. Jan. 12, 2017) (emphasis in original). "'*[P]ro se* status is not a license to litter the dockets of the federal courts with patently baseless suits.'" *Margetis*, 2015 WL 6688063, at *10 (quoting *Taylor*, 350 F. App'x at 915).

In cases where existing rules, such as Rule 11, do not provide an adequate remedy, federal district courts also have the inherent power to sanction. *United States Dist. Court S. Dist. of Texas Victoria Div. Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 845–46 (S.D. Tex. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.")). Reliance on the Court's inherent authority sanction is appropriate

"when there is a 'wide range of willful conduct' implicating multiple rules[.]" *Id.* (quoting *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir. 1995)).

"Under its inherent power to sanction, the Court may dismiss a case (when the plaintiff has engaged in sanctionable conduct) or impose default judgment (when the defendant has engaged in sanctionable conduct) when necessary to deter 'bad faith or willful abuse of the judicial process.'" *Id.* (quoting *Woodson*, 57 F.3d at 1417). "Bad faith and willful abuse have been found when a party or its counsel maintains patently unreasonable litigation positions or engages in contumacious behavior that deliberately subverts a court's administration of a case." *Id.* (citations omitted). "In addition, the Court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Tesco Corp. v. Weatherford Intern., Inc.*, No. CIV.A. H-08-2531, 2014 WL 4244215, at *2 (S.D. Tex. Aug. 25, 2014) (citations omitted) (internal quotation marks omitted).

"It has been recognized that bad faith may exist not only in the original bringing of a lawsuit, but in the later conduct of the litigation, and bad faith which arises at any stage in the litigation will give rise to the court's inherent power to impose sanctions." *Pope v. Fed. Exp. Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990), *aff'd in part, vacated in part*, 974 F.2d 982 (8th Cir. 1992).

As discussed below, the evidence clearly and convincingly shows that the only two allegations of fact of any import in Mr. Becirevic's Complaint are false, with one of the allegations based on a fabricated letter produced to NSL during the course of discovery. Under any standard, Mr. Becirevic's bad faith conduct is sanctionable, his claims should be dismissed with prejudice, and NSL should be granted all proper relief to undo the harm it has suffered,

including an award of its attorneys' fees and costs in defending Mr. Becirevic's objectively meritless claims.

### III.      ARGUMENT AND AUTHORITIES

**A.  Mr. Becirevic's breach of contract claim is based on a false allegation of fact.**

"The elements of a breach of contract claim are (1) the existence of a valid contract, (2) the performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach." *Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 622-23 (Tex. App.—Fort Worth 2005) (citations omitted).

Here, Mr. Becirevic alleges that NSL entered into a forbearance agreement with him on September 26, 2016, in which he was not required to make any student loan payments until April 28, 2017. **Exh. D** at 2, ¶ 7. According to Mr. Becirevic, he performed his obligations under the forbearance agreement, but NSL "willfully breach[ed] the agreement and filed a default claim[] on March 23, 2017, without notifying Plaintiff that [a] default claim was filed while Plaintiff loans were in [an] approved forbearance agreement." *Id.*

As detailed above, Mr. Becirevic's allegation that NSL filed a default claim on March 23, 2017, is false. ECMC initiated a default claim on Mr. Becirevic's FFELP loans because Mr. Becirevic failed to reaffirm his debt after his false certification discharge application was denied. *See supra.* Mr. Becirevic's claim for breach of contract lacks any basis in fact and, rather than being formed based upon reasonable inquiry and analysis, was falsely made in an effort to extract a settlement from NSL.

Mr. Becirevic's *pro se* status does not absolve him of his duty of candor to the Court, and his knowingly false allegation that NSL defaulted his loans clearly violates his ethical obligations. He therefore should be sanctioned under Rule 11 and/or the Court's inherent power.

### B.  Mr. Becirevic's fraud claim is based on fabricated evidence.

To recover for fraud, Mr. Becirevic must show that (1) NSL made a statement; (2) the statement was material; (3) the statement was false; (4) when the statement was made, NSL knew it was false or made it recklessly, as a positive assertion, without knowledge of its truth; (5) NSL made the statement with the intention that Mr. Becirevic would act on it; (6) Mr. Becirevic actually relied upon the statement; and (7) Mr. Becirevic's reliance on the statement harmed him. *See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011).

Mr. Becirevic alleges that NSL falsely represented that a prior forbearance agreement was extended, and he was injured because NSL subsequently defaulted his student loans. **Exh. D** at 3, ¶ 8. Key to Mr. Becirevic's claim are the allegations that NSL "without notifying Plaintiff defaulted two (2) student loans" and then "intentionally and knowingly mislead the Plaintiff" by sending a letter dated April 2, 2017, extending his forbearance through September 17, 2017. **Exh. D** at 3, ¶ 8. As discussed above, the allegation that NSL defaulted his student loans is knowingly false. *See supra.* Even more damning, the April 2, 2017 letter on which Mr. Becirevic's fraud claim rests was fabricated—presumably by Mr. Becirevic or someone acting on his behalf. *See supra.*

Ignoring the many other legal defenses that would be available to NSL, Mr. Becirevic's fraud claim—a serious allegation of intentional bad acts by NSL—is undeniably founded on perjury and evidence tampering. There are few circumstances more deserving of sanctions.

### C.  NSL gave Mr. Becirevic 21-days' notice and a chance to withdraw his complaint.

As a condition precedent to seeking sanctions under Rule 11, a movant must give notice and at least twenty-one (21) days to respond. *See* Fed. R. Civ. P. 11(c)(2). NSL served this motion to Mr. Becirevic on December 10, 2018. **Exh. B** at 2, ¶ 9. As a result, NSL met its duty

to give Mr. Becirevic notice and an opportunity to respond. Sanctions are appropriate because Mr. Becirevic refused to withdraw his fraudulent claims against NSL.

### D. The circumstances justify severe sanctions to punish Mr. Becirevic's bad-faith claims, to protect the integrity of the Court, and to deter similar acts.

Once a court finds that Rule 11 sanctions are appropriate, it has broad discretion to impose monetary or nonmonetary sanctions, including dismissal of a plaintiff's complaint with prejudice. *Jabary v. McCullough*, 325 F.R.D. 175, 183 (E.D. Tex. 2018). The sanction imposed generally should be "the least severe sanction that adequately furthers the purpose of the Rule." *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1194 (5th Cir. 1996) (citation omitted); *see also Tesco Corp.*, 2014 WL 4244215, at *2 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)) (recognizing that sanctions under the Court's inherent authority must "'[b]ecause of their very potency . . . be exercised with restraint and discretion'").

The main purpose of Rule 11 is "to deter baseless filings," *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1191 (E.D. Tex. 1996) (citation omitted), and "'to spare innocent parties and overburdened courts from the filing of frivolous lawsuits,'" *Cappa Fund III, L.L.C. v. Actherm Holding, A.S.*, No. 3:10–cv–897–L, 2011 WL 817384, at *2 (N.D. Tex. Feb. 21, 2011), *rec. adopted*, 2011 WL 816861 (N.D. Tex. Mar. 9, 2011) (quoting *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987)). Another important purpose of Rule 11 is to deter abuse of the judicial process. *Johnese v. Jani-King, Inc.*, No. CIV.A. 3:06CV0533-D, 2008 WL 631237, at *2 (N.D. Tex. Mar. 3, 2008); *see also Tesco Corp.*, 2014 WL 4244215, at *2 (citation omitted) (recognizing courts have inherent authority to punish conduct that abuses the judicial process).

"Among the greatest injuries any litigant, *pro se* or otherwise, can cause upon her fellow parties and the court is the hindering of the judicial process . . . ." *Cheatam*, 2016 WL 7743028, at *4. "Lying cannot be condoned in any formal proceeding. . . . Our legal system is dependent

on the willingness of the litigants to allow an honest and true airing of the real facts." *Johnese*, 2008 WL 631237, at *2 (citation and internal quotation marks omitted). A plaintiff who makes knowingly false statements under oath hinders the judicial process and is subject to Rule 11 sanctions. *See Jones v. Ruiz*, No. A-08-CA-788-SS, 2011 WL 197872, at *5, n.4 (W.D. Tex. Jan. 19, 2011) ("Any party or witness who lies under oath is subject to the penalties of perjury; and any lawyer or unrepresented party who suborns perjury, knowingly makes false representations to the Court, or fails to conduct a reasonable inquiry into factual matters, faces (among other things) sanctions under Federal Rule of Civil Procedure 11(c).").

Similarly, a party who fabricates evidence abuses the judicial process. *See, e.g.*, *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991) (quoting *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180 (8th Cir. 1976)) (affirming the district court's conclusion that fabrication of evidence is "'the most egregious [type of] misconduct directed to the court itself . . .'" and amounted to "fraud on the court"); *Vargas v. Peltz*, 901 F. Supp. 1572, 1580 (S.D. Fla. 1995) (finding the fabrication of evidence was an "intentional fraud upon the court").

In cases involving such severe misconduct, the harsh remedy of dismissal with prejudice is proper. *See, e.g.*, *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 78–79 (5th Cir. 2011) (approving a district court's conclusion that "dismissal of the complaint in its entirety was the only effective sanction" where the plaintiff committed perjury to further his own interests in litigation); *Pope v. Fed. Exp. Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (affirming the dismissal of a lawsuit based on "the district court's finding that manufactured evidence and perjured testimony had been introduced in an attempt to enhance the case through fraudulent conduct"); *Greeson*, 167 F. Supp. 3d 835, 846 (exercising the court's inherent power to sanction a plaintiff who fabricated evidence and lied to the court by dismissing the plaintiff's claims with prejudice).

The deterrent effect of dismissal with prejudice is two-fold. *Cheatam*, 2016 WL 7743028, at *7. First, if a *pro se* plaintiff is unable and unwilling to pay a monetary sanction, "the imposition of monetary sanctions alone will not deter such future misconduct because the offending litigant does not possess the resources to satisfy the monetary sanctions." *Id.* (citation omitted). "Second, the willingness to deceive one's fellow litigants, as well as the court, is such a severe misdeed that outright dismissal in the first instance is an appropriate course of action[.]" *Id.* "'Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.'" *Id.* (quoting *Vargas v. Peltz*, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995)).

In addition to dismissal, courts routinely hold that a plaintiff engaging in such bad-faith conduct should be obligated to pay the defendant's attorneys' fees and costs incurred. *See Greeson*, 167 F. Supp. 3d at 850 (dismissing the plaintiff's claim and ordering the payment of attorneys' fees and costs based on fabricated documents and lies) (citing *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 706 (5th Cir. 1990) *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (affirming the district court's imposition of attorney's fees under its inherent power when plaintiff litigated in bad faith and produced fraudulent testimony to the court); *Shangold v. Walt Disney Co.*, No. 03 CIV. 9522 (WHP), 2006 WL 71672, at *1 (S.D.N.Y. Jan. 12, 2006), *aff'd*, 275 Fed. Appx. 72 (2d Cir. 2008), *and aff'd*, 275 Fed. Appx. 72 (2d Cir. 2008) (imposing death penalty sanctions *and* awarding attorneys' fees under the court's inherent power where plaintiffs fabricated evidence); *Tesco*, 2014 WL 4244215, at *7 (recognizing that in cases of perjury a court may still "award attorney[s'] fees as a sanction in addition to [ ] dismissal"))

Given Mr. Becirevic's egregious conduct, this Court should find both types of sanctions are necessary and appropriate.

i.   <u>Mr. Becirevic's perjury supports dismissal of his claims with prejudice.</u>

Mr. Becirevic's conduct in this case is analogous to the plaintiff in *Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011). There, the plaintiff had filed two separate lawsuits: a an earlier personal injury lawsuit and a Title VII discrimination lawsuit. *Id.* at 78. In his personal injury lawsuit, the plaintiff testified under oath that he left his job with the defendant solely due to back pain relating to an accident. *Id.* In the Title VII case at issue in *Brown*, the same plaintiff testified under oath that he left his job with the defendant solely because of racial harassment and life-threatening activity related to the harassment. *Id.*

When the defendant discovered the directly contradictory testimony, it moved for sanctions including dismissal of the Title VII case with prejudice. *Id.* The magistrate judge agreed that dismissal was appropriate, noting that the plaintiff "'has been caught lying under oath'" and that "'[h]e committed perjury in one or perhaps both of the depositions.'" *Id.* The magistrate judge's report and recommendation further noted that, "'not everyone like [the plaintiff] will be caught. When it is discovered, the penalty needs to be severe enough to deter such conduct.'" *Id.* The district judge adopted the magistrate's report recommendation, dismissed all counts of the plaintiff's complaint with prejudice. The plaintiff appealed.

The Fifth Circuit affirmed the district court's decision in the Title VII case, finding the plaintiff's perjury "especially concerning:"

> [The plaintiff] failed to mention racial harassment in the first deposition to bolster his personal injury claim, and [the plaintiff] failed to mention his back pain in the second deposition to bolster his Title VII claim. [The plaintiff] deceitfully provided conflicting testimony in order to further his own pecuniary interests in the two lawsuits and, in doing so, undermined the integrity of the judicial process. Through his perjured testimony, [the plaintiff] committed fraud upon the court, and this blatant misconduct constitutes contumacious conduct.

*Id.* Considering the seriousness of the plaintiff's offense, the Fifth Circuit further concluded that the district court correctly found that lesser sanctions would be inadequate. *Id.*at 78-79.

Mr. Becirevic's conduct in this case is nearly identical. In *Becirevic I*, he repeatedly and correctly stated that ECMC initiated and paid a default claim in connection with his student loans. Now, having settled his case with ECMC, he alleges the direct opposite—despite his prior statements and all documentary evidence to the contrary (including sworn summary judgment evidence in *Becirevic I*). The only conclusion to be drawn is that Mr. Becirevic has deceitfully given conflicting testimony to further his own pecuniary interests and, in doing so, has undermined the integrity of the judicial process by committing an ongoing fraud on this Court. *See Greeson*, 167 F. Supp. 3d at 850 (recognizing perjury "necessarily involve[s] bad faith"). Accordingly, this Court should conclude that the sanction of dismissal with prejudice is the least severe sanction that will sufficiently punish and deter Mr. Becirevic's bad-faith conduct.

 ii. <u>Mr. Becirevic's fabrication of evidence support dismissal of his claims with prejudice.</u>

In addition to committing perjury and a fraud upon the Court, Mr. Becirevic has also fabricated evidence – yet another reason his claims should be dismissed with prejudice.

Fabrication of documentary evidence in litigation, while rare, is not without precedent. For example, in *Pope v. Fed. Exp. Corp.*, 138 F.R.D. 675 (W.D. Mo. 1990), *aff'd in part, vacated in part*, 974 F.2d 982 (8th Cir. 1992), the plaintiff fabricated a document to support her pending sexual harassment claim. *Id.* at 677. Suspicious circumstances relating to the document's production and late appearance caused the defendant to retain an "expert document examiner." *See id.* at 678. The defendant's expert testified, among other things, that the critical message contained within the exhibit has been manufactured by cutting certain words from the original version of the document and affixing new works from a new message. *Id.* at 679.

18

Further, at a hearing on a motion for sanctions, the plaintiff's attorney conceded that the document "had been manufactured, or was a photocopy of a manufactured document." *Id.* at 678. At the same time, the "plaintiff was evasive, hesitant, talked in generalities, qualified her answers, was argumentative, and frequently looked to her attorney before she would answer." *Id.*

Considering the weight of the evidence, the trial court found that discovery responses, testimony, and court filings offered by the plaintiff contained false statements. *Id.* at 681. Further, the plaintiff made those filings at a time she knew they "were not well-grounded in fact" and relied on the fabricated document "when plaintiff knew it was false." *Id.* The *Pope* court accordingly had no difficulty finding she offered "pleadings for improper purposes, including harassment and a needless increase in litigation costs." *Id.*; *see also id.* at 683 ("[P]laintiff knowingly advanced a document which she knew was not what she represented it to be, and that she relied upon it in her pleadings. She repeatedly attempted to promote the use of the document on her behalf in this litigation, even though she knew it was manufactured. She acted in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system.").

Like the Fifth Circuit in *Brown*, the *Pope* court granted a dismissal with prejudice:

Dismissal of a lawsuit, to be sure, is among the harshest of sanctions. However, the severity of the misdeed here compels such harshness. The manufactured document would have been the linchpin of plaintiff's case. Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Pope*, 138 F.R.D. at 683 (emphasis added).

This Court should follow suit, both to punish Mr. Becirevic and to deter similar conduct. *See Johnese*, 2008 WL 631237, at *2 ("[W]hen dismissing a case for fraudulent litigation

conduct, the court does so not only as a remedy for harm incurred by other parties, but also as a deterrent to future litigants who might consider engaging in similar conduct.").

That Mr. Becirevic is *pro se* is no defense to such conduct, as this Court recognized in *Cheatam v. JCPenney Co., Inc.*, No. 1:16-CV-00072-MAC, 2016 WL 7743028 (E.D. Tex. Nov. 10, 2016), *report and recommendation adopted*, No. 1:16-CV-72, 2017 WL 123806 (E.D. Tex. Jan. 12, 2017) (Hawthorn, J.). The plaintiff in *Cheatam* sued her former employer alleging wrongful termination, defamation, and other claims. *Id.* at *1. The employer sought dismissal of the case with prejudice citing fraudulent witness statements incorporated into the plaintiff's pleadings. *Id.* at *2. This Court found the totality of the evidence, including the plaintiff's inability to produce the original statements, supported the employer's contention that the plaintiff had committed a fraud on the Court. *Id.* at *6. The Court reasoned in part that the plaintiff's "fabrication of evidence was manufactured to corroborate vital elements of [her] retaliation and Title VII claims, and thus was 'designed to improperly influence the court in its decision.'" *Id.* (quoting *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996)).

Turning to the question of sanctions, the Court recognized that the *pro se* plaintiff was "afforded greater leniency with respect to the standards required of both her pleadings and associated evidence production." *Id.* at *4 (citation omitted). But the plaintiff was not excused from the ethical standards governing all litigants—attorney or not. *Id.* Because the plaintiff engaged in "[o]ne of the most extreme methods by which one may tamper with the judicial process," the Court found her conduct supported dismissal with prejudice. *Id.* (citation omitted). Further, the imposition of "issue-related sanctions" such as striking the fabricated statements would have been insufficient because they went to the heart of the plaintiff's claims and would have effectively disposed of the case anyway. *Id.* (citation omitted).

This Court should hold similarly, and dismiss Mr. Becirevic's Complaint with prejudice. Any lesser sanctions would be insufficient to remedy Mr. Becirevic's misconduct; moreover, the striking of his false statements and fabricated evidence would effectively end his claims anyway. However, the Court should not stop at dismissal under the egregious facts of this case. Additional sanctions are needed to resolve the harm inflicted on NSL, and to adequately deter other litigants from committing similar acts.

      iii.    <u>Mr. Becerivic should reimburse all attorneys' fees and costs incurred by NSL.</u>

> Among the greatest injuries any litigant, *pro se* or otherwise, can cause upon her fellow parties and the court is the hindering of the judicial process: "tampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Chambers*, 501 U.S. at 44 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944)).

*Cheatam*, 2016 WL 7743028, at *4. "[T]he reality is that "[a] litigious plaintiff pressing a frivolous claim, though rarely succeeding on the merits, can be extremely costly to the defendant and can waste an inordinate amount of court time.'" *Margetis*, 2015 WL 6688063, at *15 (quoting *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980)).

By filing and pursuing this fraudulent case, Mr. Becirevic has wasted this Court's time and resources and caused NSL to incur substantial unnecessary fees and costs. His abuse of the judicial process is precisely the type of conduct that warrants both the dismissal of his claims with prejudice *and* an order to reimburse NSL for all reasonable fees and costs it incurred to defend those claims. *See Greeson*, 167 F. Supp. 3d at 850 (dismissing the plaintiff's claim and ordering the payment of attorneys' fees and costs based on fabricated documents and lies).

No lesser sanction will adequately deter Mr. Becirevic and similar plaintiffs from continuing with this action. No lesser sanction will prevent Mr. Becirevic and similar plaintiffs

from further abusing the litigation process at NSL's expense. No lesser sanction will adequately deter similar bad acts by Mr. Becirevic and similar plaintiffs in the future.

## IV.    CONCLUSION

> The civil justice system serves a vital function in our society. While far from perfect, it is the best method humankind has ever devised for determining the truth. When the system is abused . . ., the risk is not just that the truth will be distorted in a single case—itself a dire result. The even graver consequence is reduced public confidence in the ability of the justice system to deliver true and fair judgments. As a result, the sanctions for such conduct must be severe.

*Greeson*, 167 F. Supp. 3d at 853. Mr. Becirevic's breach of contract and fraud claims are founded on knowingly false statements and fabricated evidence. For all of the reasons above, the sanctions for his bad-faith conduct must be severe. NSL accordingly requests that the Court dismiss his Complaint with prejudice, award NSL its reasonable attorneys' fees and costs incurred, set a hearing to determine the amount of reasonable attorneys' fees and costs to which NSL is entitled, and award NSL all further relief to which NSL may be justly entitled.


Dated: January 15, 2019                            /s/ Adam C. Ragan
                                                   Adam C. Ragan
                                                   State Bar No. 24079172

                                                   **HUNTON ANDREWS KURTH LLP**
                                                   1445 Ross Avenue, Suite 3700
                                                   Dallas, Texas 75202
                                                   214-979-3000
                                                   214-740-7110 (fax)
                                                   aragan@huntonak.com

                                                   ATTORNEYS FOR DEFENDANT
                                                   NAVIENT SOLUTIONS, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 15, 2019, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record. A copy also was mailed to Mr. Becirevic via regular and certified mail at the following address: Izet Becirevic, 2008 Laurel Lane, Plano, Texas 75074.

*/s/ Adam C. Ragan*
Adam C. Ragan